UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT JAMES BALDERSTON,

    *Plaintiff*,

v.                                  CASE NO. 10-CV-13429

COMMISSIONER OF            DISTRICT JUDGE GERALD R. ROSEN
SOCIAL SECURITY,            MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying in part Plaintiff's claim for a period of disability and disability insurance benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 15, 16.)

Plaintiff was 47 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 12 at 20, 30.) Plaintiff's employment history includes work as an auto parts manager. (Tr. at 142.) Plaintiff last worked in 2005. (*Id.*)

Plaintiff filed the instant claim on February 17, 2009, alleging that he became unable to work on December 4, 2008. (Tr. at 117.) The claim was denied at the initial administrative stages. (Tr. at 51.) In denying Plaintiff's claims, the Defendant Commissioner considered affective disorders and epilepsy as possible bases of disability. (*Id.*) On March 12, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Daniel G. Heely, who considered the application for benefits *de novo*. (Tr. at 27-50.) In a decision dated April 27, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 9-21.) Plaintiff requested a review of this decision on May 21, 2010. (Tr. at 6.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 28, 2010, when the Appeals Council denied Plaintiff's requres for review. (Tr. at 1-3.) Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision under 42 U.S.C. § 405(g) on August 27, 2010.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with

observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

4

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v),(g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since December 3, 2008. (Tr. at 14.) At step two, the ALJ found that Plaintiff's seizure disorder, bipolar disorder and post-traumatic stress disorder were "severe" within the meaning of the second sequential step. (Tr. at 14-15.) At step three, the ALJ concluded that Plaintiff's combination of impairments did not meet or equal any of the listings in the regulations. (Tr. at 15-20.) At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. at 20.) At step five, the ALJ found that Plaintiff retained the residual functional capacity to perform work, but with non-exertional limitations. (Tr. at 20-21.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 21.)

### E. Administrative Record

A review of the medical evidence contained in the administrative record indicates that in May 2000 Plaintiff was seen by David Drasnin, Ph.D., for an initial diagnostic interview. (Tr. at 192.) Plaintiff described difficulties with interpersonal relationships. (*Id.*) In a letter to Paul Gold, D.O., Dr. Drasnin reported that Plaintiff did not have suicidal ideations, did have self-esteem problems, and did, in Dr. Drasnin's opinion, meet the criteria for a diagnosis of major depression. (Tr. at 193.)

In late March 2005, Plaintiff was seen by Lee Marshall, D.O. (Tr. at 307.) In a letter to Dr. Gold, Dr. Marshall described adjustments to Plaintiff's medications and Plaintiff's complaints of agitation. (*Id.*) Plaintiff's mood was described as pleasant, although somewhat agitated. Physical examination showed normal gait, muscle strength, and reflexes. (*Id.*)

In December 2008, Plaintiff was hospitalized at Henry Ford hospital after emailing his "last will and testament" to his bosses. (Tr. at 198.) On admission, Plaintiff described stresses at work and periods of manic activity. (*Id.*) A history of bipolar disorder was noted. (Tr. at 202.) Plaintiff was described as friendly and cooperative. (Tr. at 208.) Plaintiff was given medications and various forms of therapy. (Tr. at 198.) He was released after five days; his treating physicians reported no homicidal or suicidal ideations and improved mood and affect. (*Id.*) He was discharged with prescriptions for medications. (Tr. at 199.)

In May 2009, Plaintiff underwent a psychological examination conducted at the request of the Disability Determination by Elizabeth Bishop, Ph.D. Plaintiff reported diagnoses of epilepsy and bipolar disorder. (Tr. at 309.) He also reported seizures several times a month. (*Id.*) Dr. Bishop found that Plaintiff was in contact with reality, although exhibiting low self-esteem. (Tr. at 310.) Plaintiff's speech was clear, spontaneous and logical, although a little pressured. (*Id.*) Plaintiff reported that his activities included raising and caring for a large number of exotic pet birds, lawn and house work, laundry, blogging, painting, drawing and working on a home he and his wife bought through a foreclosure sale. (*Id.*) Plaintiff recounted nightmares and flashbacks relating to sexual abuse he received as a child. (*Id.*) Plaintiff's mood was described as moderately depressed and he denied hallucinations. (Tr. at 311.) Plaintiff was diagnosed with chronic post traumatic stress disorder and mixed episode moderate bipolar disorder. (Tr. at 312.)

In November 2009, Dr. Gold completed a "Mental Residual Functional Capacity Questionnaire." He stated that he had last seen Plaintiff approximately one month earlier. Dr. Gold stated that Plaintiff was not seeing an neurologist and needed to see one. (Tr. at 353.) Dr. Gold reported that Plaintiff suffered from bipolar depression, which was not well controlled. The doctor felt Plaintiff had a good prognosis if he obtained appropriate medical consultation. (*Id.*) With

regard to Plaintiff's mental abilities to undertake unskilled work, the doctor felt that Plaintiff's abilities to maintain attention over two hours, sustain routine without special supervision and complete normal workdays and workweeks were seriously limited. (Tr. at 356.) Plaintiff's abilities to work without being distracted, make work-related decisions, accept instructions, get along with others, respond appropriately, and deal with work stress were "unable to meet competitive standards." (*Id.*) Dr. Gold felt that Plaintiff's mental abilities to do semiskilled work were "unable to meet competitive standards." (*Id.*) The doctor felt that Plaintiff's abilities to relate to the general public and maintain socially appropriate behavior were "unable to meet competitive standards." (Tr. at 356.) Plaintiff's ability to adhere to standards of cleanliness, use public transport and travel to unfamiliar places was rated as "very good" or "limited but satisfactory." (*Id.*) Dr. Gold stated that Plaintiff did not have a low IQ or reduced intellectual functioning, was not a malingerer and that his impairments were consistent with his symptoms. (*Id.*)

X-rays of Plaintiff's lumbar spine taken at the request of Dr. Gold in February 2010 showed minimal degenerative changes. (Tr. at 369.)

### F. Analysis and Conclusions

#### 1. Legal Standards

As mentioned, the ALJ determined that Plaintiff possessed the residual functional capacity to perform work at any exertional level, but with a series of non-exertional limitations. (Tr. at 16-20.) After review of the record, I suggest that the Commissioner utilized the proper legal standard in the application of the five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the Commissioner's decision.

#### 2. Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 15.) In his *pro se* brief, Plaintiff argues that he continues to suffer disabling pain. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

On this record, I conclude that substantial evidence supports the Commissioner's determination. Although Plaintiff repeatedly mentions that he suffers from seizures (Doc. 15; Tr. at 163), I agree with the ALJ that this record provides no meaningful corroboration for this assertion.

The Commissioner must consider all medical opinions that are received in evaluating a claimant's case. 20 C.F.R. §§ 404.1527(d), 416.927(d). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Some opinions, such as those from examining and treating physicians, are normally entitled to greater weight. 20 C.F.R. §§ 404.1527(d), 416.927(d). For example, the Commissioner will generally "give more weight to the opinion of a source who has examined [the patient] than to the opinion of a source who has not examined [the patient]." 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

In weighing the opinions and medical evidence as to both physical and mental impairments, the Commissioner must consider relevant factors such as the length, nature and extent of the

treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees the

physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

I suggest that the Commissioner properly evaluated the medical opinions provided in the record. These medical findings are fully consistent with the residual functional capacity determined by the ALJ and, I suggest, constitute substantial evidence supporting the ALJ's hypothetical question and his ultimate findings. The ALJ's findings are also consistent with Plaintiff's own report that he raises and cares for a large number of exotic pet birds, does lawn and house work, does laundry, spends time on his computer, paints, draws, and, of particular note, works on a home he and his wife bought through a foreclosure sale. (Tr. at 310.)

I further suggest that the ALJ properly discounted Dr. Gold's statement that Plaintiff should be considered disabled (Tr. at 356) since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner," *Kidd v. Comm'r*, 283 Fed. App'x 336, 341 (6th Cir. 2008), and this statement is inconsistent with other substantial evidence in the record. *See Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).

After examining the record evidence, I also suggest that substantial evidence supports the ALJ's finding that Plaintiff's assertion regarding his level of pain was not fully credible. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a

trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999). In this case, substantial evidence supports the ALJ's finding that Plaintiff's testimony regarding his level of pain and mental impairment was not fully credible, particularly in light of the daily activities Plaintiff described both to Dr. Bishop and during the administrative hearing. (Tr. at 34-39, 310.)

### 3.     Conclusion

For all these reasons, after review of the record, I conclude that the decision of the Commissioner is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.     REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/ *Charles E Binder*
                                              CHARLES E. BINDER
Dated: April 11, 2011                        United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  April 11, 2011                     By     s/Patricia T. Morris
                                                      Law Clerk to Magistrate Judge Binder